Filed 2/8/10          NO. 4-09-0036

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ROSE WHITE, Individually and as | ) | Appeal from |
| Administratrix of the Estate of | ) | Circuit Court of |
| DON R. WHITE, Deceased, | ) | McLean County |
|     Plaintiff-Appellee, | ) | No. 02L136 |
|     v. | ) | |
| GARLOCK SEALING TECHNOLOGIES, LLC, | ) | Honorable |
|     Defendant-Appellant. | ) | G. Michael Prall, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

This case presents the question of whether Supreme Court Rule 237(b) (210 Ill. 2d R. 237(b)), dealing with persons whom a party may be required to produce at trial, includes not only persons who are "officer[s], director[s], or employee[s,]" but also those persons who are under a party's control. We hold that it does not.

I. PROLOGUE

During an October 2008 wrongful-death jury trial based upon asbestos exposure (which was the second jury trial in this case), the trial court sanctioned defendant, Garlock Sealing Technologies, LLC, pursuant to Rule 237(b) (210 Ill. 2d R. 237(b)) for failing to produce a witness. The court entered judgment against Garlock on the issues of liability and causation and ordered the case to proceed on the issue of damages only. The jury subsequently awarded plaintiff, Rose White, $500,000 in damages.

Garlock appeals, arguing that (1) the trial court erred

by finding that Garlock violated Rule 237(b); (2) if this court agrees and orders a new trial, Garlock should be allowed to introduce evidence of decedent's exposure to other sources of asbestos; and (3) if this court affirms the court's Rule 237(b) finding, we should order remittitur. Because we agree with Garlock that the court erred by finding that Garlock violated Rule 237(b), we reverse and remand for a new trial.

## II. BACKGROUND

### A. The First Trial

#### 1. White's Wrongful-Death Suit

In August 2002, White sued Garlock (and several other defendants who are not parties to this appeal) for the wrongful death of her husband, Don R. White. White asserted that Garlock was responsible for her husband's death because, while employed at a power plant, her husband's duties required him to perform work that exposed him to asbestos-containing products that Garlock had manufactured.

#### 2. The Rule 237(b) Issue at the First Trial

##### a. Rule 237(b)

Because Rule 237(b) is the gravamen of Garlock's claim on appeal, we will first discuss that rule. It reads, in pertinent part, as follows:

> "The appearance at the trial or other
> evidentiary hearing of a party or a person
> who at the time of trial or other evidentiary
> hearing is an officer, director, or employee

of a party may be required by serving the party with a notice designating the person who is required to appear. *** Upon a failure to comply with the notice, the court may enter any order that is just, including any sanction or remedy provided for in Rule 219(c) [(210 Ill. 2d R. 219(c))] that may be appropriate."  210 Ill. 2d R. 237(b).

### b. The Interrogatory That Gave Rise to White's Rule 237(b) Request

Prior to the first jury trial in this case that took place in November and December 2005, White presented the trial court with a response by Garlock to an interrogatory from another asbestos-related case in which Garlock was a party.  That interrogatory stated as follows:

"Has [Garlock] ever had one or more persons whose primary responsibility included looking after or monitoring the health of [Garlock's] employees, such as a medical director?  If so, state the following as to each person who [ha]s held this position: name, address, name of the position or title, and dates during which he or she held the position."

Garlock's response stated that Dr. David Carlson had done so since "July/August 2002."  The address listed under Dr. Carlson's name read: "Garlock Sealing Technologies, LLC[,] 1666 Division

- 3 -

Street[,] Palmyra, New York 14522."

    c. The Rule 237(b) Arguments Presented to the Trial Court

        In September 2005, White served Garlock with a Rule 237(b) request to produce Dr. Carlson.  Garlock responded by filing a motion to quash White's request, asserting that although Dr. Carlson had examined and treated some Garlock employees, he did so as an independent contractor, not an employee.  As proof, Garlock submitted an affidavit from its vice president of human relations, Ramond Mathes, in which Mathes stated that (1) Dr. Carlson was not and had never been an employee of Garlock; (2) Dr. Carlson had never been paid a salary by Garlock; (3) Dr. Carlson had never received employee benefits from Garlock; (4) Dr. Carlson was the medical director of Healthworks, which was part of the New York-based Thompson Medical Center; (5) Healthworks had provided services to Garlock since June 2002; (6) Healthworks provided medical services to approximately 120 other businesses and organizations; and (7) Dr. Carlson had visited Garlock plants and treated its employees in his capacity as an independent contractor or employee of Healthworks.  Following an October 21, 2005, hearing, the trial court denied Garlock's motion to quash.

        On October 31, 2005, Garlock filed a motion to reconsider the trial court's October 21, 2005, ruling.  At a November 2005 hearing on that motion to reconsider, Garlock engaged in the following exchange with the court:

            "[GARLOCK]: Clearly in this particular

case, the [interrogatory from the other case] counsel cites in no way indicates that Dr. Carlson is an employee, officer[,] or director. It has an address on there which has unknown explanations as to what the particular address means. We have affidavits from the supposed employer, the corporation, saying Dr. Carlson works for this health company who has been contracted to come and look at people at our facility.

Dr. Carlson, the horse's mouth, has an affidavit saying [he is] not an employee, officer[,] or director of Garlock.

* * *

What [White] gives [the court] is a document from a closed lawsuit where there is nothing in [t]here to indicate that [Dr. Carlson] is an officer, director[,] or employee. It has an address of Palmyra, New York, and [White] wants [this court] to speculate that somehow *** this guy was a member of the company. ***

THE COURT: Well, *** the confusing part of this to this court is, if he is not now and has never been an employee of Garlock, why was this interrogatory answered in the

- 5 -

way it was, giving Garlock as his address? Maybe it is speculation, but that does lead one to speculate or wonder about what's going on.

* * *

The question is why would you answer this interrogatory this way if [Dr. Carlson] has never had an office at Garlock and never been employed at Garlock and has always provided independent medical services?  As [the court] recall[s], [the court] didn't get a really great answer before, and [it is] not getting a really great answer today.

[GARLOCK]: I don't know[.]  I can come up with a bunch of plausible answers, but I don't know.  I don't know if there's a facility that he works out of to check people.  I don't know.

But I do have an affidavit saying he's not in our control.  We have an affidavit from Garlock people saying he is not in our control ***.

THE COURT: [A]ny reasonable person looking at this response here would say on whatever date, September of 2003, that Dr. *** Carlson was the medical director of Garlock.

- 6 -

[T]hat's the only implication you can receive from this.  This business address is Garlock['s] in Palmyra."

d. The Trial Court's Ruling

At a hearing later that month, the trial court further mused about the Rule 237(b) issue, as follows:

"THE COURT: Let [the court] tell you where [it is] on the Rule 237 thing.  [The court] did a little bit of research.  [The court] would like to do a little bit more.  [The court] did not find any particular case that was any help in Illinois, and [the court does not] know that there are any, but part of [the court's] thinking here is, even when you get away from the issue as to the interrogatory and whether [Dr. Carlson] worked for [Garlock] or whatever, assuming that the doctor is what he says he is, which is an independent contractor and the medical director of some other outfit that provides health services to Garlock employees, part of [the court's] thinking here is what is the spirit and the flavor, if you will, of Rule 237, and is it to be read literally or is there room for interpretation?

The gist of *** the control factor that

- 7 -

would allow the [c]ourt to force a party to produce someone who is an employee or an officer or whatever, is that they have control. That's the gist of the control. They have control and that control would generally be like control of their position and their livelihood. Does that disappear when a person is an independent contractor?

Well, it's not as strong a factor, but that factor is still there, and [the court] suppose[s] one would have to know how much of this doctor's business is related to Garlock to know how strong that factor would be, but there is still a control factor there. If you don't come and testify when you're asked to by the company, you won't be providing our health services anymore, which is not really much different than saying to an employee, you better show up or you won't be our employee anymore. It seems to [this court] that the same principle is involved, and whether the [c]ourt should somewhat broaden the interpretation of Rule 237 is what [the court] is pondering."

At trial later that month, White called Garlock's corporate representative, James Heffron, to testify. Heffron

testified, in part, that he knew Dr. Carlson (1) had been Garlock's company physician in the past and (2) was Garlock's company physician at the time of trial. At the conclusion of the proceedings that day, White explained to the trial court that Heffron's testimony had just reaffirmed Garlock's interrogatory that Dr. Carlson was Garlock's company doctor. Garlock responded by engaging with the court as follows:

"[GARLOCK]: That's *** [an] inaccurate statement of what the witness testified to.

THE COURT: What did he testify to[?]

[GARLOCK]: He testified *** that he does medical work for the company, not that he *** is an employee of the company at all. If you notice there was never a question asked of him 'Is Dr. Carlson an employee of the company?' If you look at the record, you'll see that that question was never asked.

THE COURT: That's true, but that's not what [White] said. [White] said he testified the he was the company doctor.

[GARLOCK]: Just because somebody can treat bumps and bruises and that's who [the employee is] sent to, that doesn't mean he's an employee of the company. And that's what the relevant issue is.

THE COURT: [M]aybe [the court] didn't

make an additional ruling when [it] made the final reconsideration for this matter, but-- and the [a]ppellate [c]ourt [may] well decide that my interpretation of this is wrong[--]as with many areas of the law [this court] do[es not] think [it] necessarily has to proceed on the exact literal letter of what's in a statute, that it can proceed at times when it's appropriate within the spirit of what's intended.  And based on the information that's been made available to the [c]ourt today, which is not in any way diminished by the testimony of the company representative, that this is the company's physician, [and that] leads the [c]ourt to believe that Dr. Carlson is in a position very similar to being an employee.  *** [The court] believe[s] [that] does not place him outside the parameters of what Rule 237 was intended to accomplish, and *** Garlock, from what [the court] presently know[s], is in a position to produce this witness, and that remains the ruling of the [c]ourt."

e. The Trial Court's Sanction

At the close of White's case in chief, the trial court instructed the jury regarding Garlock's failure to produce Dr.

Carlson, explaining, in pertinent part, as follows: "Despite the [c]ourt's order, Garlock has failed to produce Dr. Carlson and has failed to offer an explanation for his absence acceptable to the court. You will receive further instruction at the conclusion of the case related to this issue."

At the conclusion of the case, the trial court instructed the jury as follows:

> "If a party to this case has failed to offer evidence within its power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:
>
> 1. The evidence was under control of the party and could have been produced by exercising reasonable diligence.
>
> 2. The evidence was not equally available to an adverse party.
>
> 3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if it believed it to be favorable.
>
> 4. No reasonable excuse for the failure has been shown."

### 3. The Jury's Verdict and the Parties' Posttrial Motions

In December 2005, the jury returned a verdict for Garlock. Shortly thereafter, White filed a posttrial motion,

- 11 -

alleging that Garlock had violated several trial court orders and rulings.  In part, White asserted that Garlock had violated Rules 213(i) and 237(b) (210 Ill. 2d Rs. 213(i), 237(b)).  In July 2006, the court granted White's motion and ordered a new trial because it found that Garlock had violated Rule 213(i) (210 Ill. 2d R. 213(i)).  Specifically, the court found that Garlock had failed to supplement its written interrogatories after Garlock discovered on the eve of trial that the answers initially provided by a doctor who was one of its expert witnesses had changed.

## B. The First Appeal

In September 2006, this court granted Garlock's petition under Supreme Court Rule 306(a)(1) (210 Ill. 2d R. 306(a)(1)) for leave to appeal the trial court's decision to grant White's motion for a new trial.  In that petition, Garlock challenged only the trial court's rulings that (1) found Garlock violated Rule 213(i) and (2) granted White a new trial based upon that finding.  Garlock made no mention in that petition of the trial court's Rule 237(b) findings and sanctions, but White raised the issue in her brief to this court.

### 1. The Rule 237(b) Issue on Appeal

With respect to Rule 237(b), the issue before this court was, given the violation of Rule 237(b) as found by the lower court, whether the court abused its discretion by imposing an insufficient sanction.  See White v. Garlock Sealing Technologies, LLC, 373 Ill. App. 3d 309, 869 N.E.2d 244 (2007) (hereinaf-

- 12 -

ter, White I).  As earlier noted, Garlock as appellant did not contest the trial court's sanction (no doubt because Garlock won at trial).  Garlock's sole interest in bringing its appeal under Rule 306(a) was to have this court reverse the trial court's order granting White's motion for a new trial.

However, Rule 306(a) states that when a petition for leave to appeal an order granting a new trial is granted, all rulings on posttrial motions are before the reviewing court. White had raised claims in her posttrial motion that (1) Garlock violated Rule 213(i) and (2) the trial court's sanction for Garlock's violation of Rule 237(b) was insufficient.  White also raised on appeal that latter issue, arguing that because Garlock intentionally violated Rule 237(b), this court should enter judgment against Garlock on the issues of liability and causation and order a new trial on damages only.  White I, 373 Ill. App. 3d at 330, 869 N.E.2d at 260.

## 2. This Court's Decision

In June 2007, this court affirmed the trial court's order granting White a new trial, concluding that (1) Garlock's actions violated Rule 213(i) and (2) the court did not abuse its discretion by ordering a new trial based upon Garlock's failure to comply with that rule (White I, 373 Ill. App. 3d at 328-29, 869 N.E.2d at 259).

## 3. This Court's Discussion of Rule 237(b)

As part of our opinion, this court stated the follow-ing, in pertinent part, with respect to White's Rule 237(b)

request:

"One month before the November 2005 jury trial, White served Garlock with a notice under Rule 237(b) requesting, among other things, that Garlock produce Dr. *** Carlson to testify at trial. Garlock moved to quash the notice, arguing that Dr. Carlson was not then and never had been an employee, officer, or director of Garlock. The matter was extensively argued before the trial court, which ultimately agreed with White that although Dr. Carlson was not an employee, officer, or director of Garlock, he was in a similar position because of his perceived economic relationship with Garlock.

When Garlock did not produce Dr. Carlson to testify at trial, the trial court instructed the jury [as noted earlier in this opinion.]

* * *

In White's posttrial motion, she raised the issue of Garlock's failure to produce Dr. Carlson. The trial court concluded that the sanction it entered against Garlock was sufficient, noting that White did not take Dr. Carlson's deposition or provide the court

- 14 -

with information it could use to determine that Dr. Carlson's testimony would have in fact been important.

　　We earlier mentioned the obvious care and consideration the trial court gave to the Rule 213(i) issue in this case, and we are equally impressed regarding the court's handling of the Rule 237(b) issue.  Like other discovery issues, the appropriateness of any sanction for a violation of Rule 237(b) is left to the sound discretion of the trial court."  White I, 373 Ill. App. 3d at 330-31, 869 N.E.2d at 260-61.

C. White's Rule 237(b) Request Prior to the Second Trial

　　In June 2008, following this court's remand, White filed a second Rule 237(b) request, in which she requested that Garlock produce Dr. Carlson for the second trial.  Garlock responded by filing a motion to quash, again asserting that Dr. Carlson was not, and had never been, one of its employees, officers, or directors.  Following an August 2008 hearing on Garlock's motion, at which the trial court--although this time the issue was before a different trial judge--heard essentially the same arguments that the parties had made prior to the first trial, the court found as follows:

　　"The trial judge in the previous *** trial *** ruled that *** this particular witness

[(Dr. Carlson)] fell within *** [Rule] 237[(b)] *** which [this court] assume[s] came under the [']employee of a party['] [phraseology]. [This court has not] read [the previous court's] whole ruling *** but [that judge] decided that the *** appropriate remedy at that point in that trial was [to give] an instruction to the jury on an adverse inference from nonproduction of that witness. And then the [a]ppellate [c]ourt *** specifically discussed this [and] specifically sa[id] that [it] approve[d of] the way [the judge] handled it***. *** So [the appellate court] ha[s said] this is the way [it] view[s] this particular issue***. *** [W]hether [this court] like[s] it or not, [the appellate court has] ruled on this issue specifically and said it was okay the way it was done, so [this court will] stick with [the earlier judge's] ruling that [Rule] 237[(b)] applies to this particular witness***."

### D. The Second Trial

#### 1. <u>Garlock's</u> <u>Motion</u> <u>To</u> <u>Reconsider</u>

On October 6, 2008, just before trial, Garlock moved the trial court to reconsider its August 2008 ruling to enforce

- 16 -

White's Rule 237(b) request as to Dr. Carlson.  The court refused to reconsider its prior ruling, but added that Garlock was free to object to the issue "at the appropriate time."

On October 7, 2008, following jury selection, Garlock again moved to quash White's Rule 237(b) request, at which point White's counsel, among other things, posited that further discussion of the matter should be deferred until White called Dr. Carlson to testify.  Garlock responded that it had produced evidence to show that not only had it never employed Dr. Carlson, but that it no longer had a business relationship with Dr. Carlson's actual employer, Healthworks.  Garlock explained that Healthworks had forbidden Dr. Carlson from appearing at trial.  Thereafter, the court directed Garlock to file a motion or affidavit outlining its efforts to produce Dr. Carlson.

On October 8, 2008, the trial commenced and White called Dr. Carlson as her first witness.  However, Dr. Carlson did not appear.  White then called Heffron to testify.  Heffron testified, in pertinent part, that Dr. Carlson was a physician whom the company had contracted to handle certain medical issues and was not a company employee.  That same day, Garlock filed a memorandum and exhibits, in which Garlock posited that (1) Dr. Carlson was not an employee of Garlock, (2) no economic relationship existed between Garlock and Healthworks, (3) Garlock had attempted to produce Dr. Carlson for trial, and (4) Healthworks refused to permit Dr. Carlson to testify.

2. <u>White's</u> <u>Motion</u> <u>for</u> <u>Sanctions</u> <u>Pursuant</u> <u>to</u> <u>Rule</u> <u>237(b)</u>

On October 9, 2008, White moved for sanctions against Garlock based on its failure to produce Dr. Carlson, tendering a written motion in that pursuit. At that point, the trial court adjourned the trial to allow Garlock an opportunity to review White's motion and to prepare its response.

On October 10, 2008, Garlock provided White and the trial court with its written response to White's motion for sanctions. In that response, Garlock explained the steps that it had taken to produce Dr. Carlson and the reasons why it should not be sanctioned.

3. <u>The</u> <u>Trial</u> <u>Court's</u> <u>Ruling</u>

Following a hearing on sanctions, the trial court found as follows:

"[This court] had to make a determination [as to whether] reasonable steps were taken *** to secure the attendance of this witness who [was], up until apparently almost at the date of trial or was in a position--a relationship[--]with [Garlock] of some nature. [The court is] still unclear exactly the nature of what that relationship was. But[,] it's clear from the record [that] the relationship was medical director at least at one point [as he] was described as such by [Garlock's] corporate representative[.] This

- 18 -

is a gentleman who has been with the corpora-
tion since 1973 *** and has been involved in
the asbestos part of the litigation for a
number of years[.]  Now he says he was mis-
taken.

　　　Well, [the court] do[es not] know.  All
[the court] know[s] is [that] back in 2005
when he testified[,] he said that's what [Dr.
Carlson] was."

That same day, the court entered its written order, in which, as
a sanction, the court entered judgment against Garlock on the
issues of liability and causation, with the trial to proceed only
on the issue of damages.

### 4. The Jury's Verdict

On October 15, 2009, the jury returned a verdict for
White in the amount of $500,000.  The court later reduced the
judgment to $466,666.66 pursuant to a setoff.

This appeal followed.

### III. ANALYSIS

#### A. Garlock's Claim That the Trial Court Erred by Finding That Garlock Violated Rule 237(b)

Garlock argues that the trial court erred by finding
that it violated Rule 237(b) (210 Ill. 2d R. 237(b)) for failing
to produce Dr. Carlson.  Specifically, Garlock contends that the
court erroneously interpreted Rule 237(b) to include not only--as
the plain language of the rule states--"person[s] who at the time
of trial *** [are] officer[s], director[s], or employee[s] of a

- 19 -

party," but also persons who were at some point under a party's control.

White responds with various arguments, remaining consistent in her position that the spirit of Rule 237(b) requires a person under a party's control to be considered the equivalent of an officer, director, or employee. In that regard, she asserts the following:

> "Rule 237(b) does not contain, nor has Garlock suggested, a definition for any of these terms[: officer, director, or employee]. Each represents a type of agency relationship. It is the agency relationship that is the basis for the court's authority.
>
> * * *
>
> The authority of a court to order a party to produce its agent as a witness predated the adoption of Rule 237(b). Rule 237(b) is not the source of the court's authority, it is but one expression of that authority."

We agree with Garlock and disagree with White's expansive reading of Rule 237(b).

### 1. The Standard of Review

Because Garlock's argument involves the construction of a supreme court rule, our review is de novo. See In re Estate of Rennick, 181 Ill. 2d 395, 401, 692 N.E.2d 1150, 1154 (1998)

(noting that the construction of a rule, like the construction of a statute, is a question of law to be reviewed <u>de</u> <u>novo</u>). When interpreting a supreme court rule, a reviewing court should apply the same principles of construction that apply to a statute--that is, the reviewing court should ascertain and give effect to the intent of the supreme court in promulgating the rule. <u>Berry v.</u> <u>American Standard, Inc.,</u> 382 Ill. App. 3d 895, 899, 888 N.E.2d 740, 745 (2008). The most reliable indicator of that intent is the specific language used in the rule. <u>Berry</u>, 382 Ill. App. 3d at 899, 888 N.E.2d at 745. When the language of a supreme court rule is clear and unambiguous, a reviewing court should apply the language without reference to other interpretive aids. <u>Berry</u>, 382 Ill. App. 3d at 899, 888 N.E.2d at 745.

### 2. <u>The</u> <u>Pertinent</u> <u>Language</u> <u>of</u> <u>Rule</u> <u>237(b)</u>

Rule 237(b) reads, in pertinent part, as follows:

"The appearance at the trial or other evidentiary hearing of a party or a <u>person</u> <u>who</u> <u>at</u> <u>the</u> <u>time</u> <u>of</u> <u>trial</u> or other evidentiary hearing <u>is</u> <u>an</u> <u>officer</u>, <u>director</u>, <u>or</u> <u>employee</u> <u>of</u> <u>a</u> <u>party</u> may be required by serving the party with a notice designating the person who is required to appear." (Emphases added.) 210 Ill. 2d R. 237(b).

### 3. <u>Rule</u> <u>237(b)</u> <u>and</u> <u>This</u> <u>Case</u>

The plain language of Rule 237(b) is clear and unambiguous. The supreme court's intent when it promulgated Rule 237(b)

- 21 -

was to give trial courts the ability to force--through sanction or other remedy--a party to produce a person who was then an officer, director, or employee of that party. Here, Dr. Carlson was not an officer, director, or employee of Garlock at the time of trial. Indeed, in its October 10, 2008, findings, the trial court expressed doubt that Garlock had ever employed Dr. Carlson, noting that it was "still unclear exactly what the nature of the relationship was." Accordingly, we conclude that the court erred by finding that Garlock violated Rule 237(b).

In so concluding, we note that the supreme court is perfectly capable of saying what it means and understands the importance of using precise language. The supreme court, in Rule 237(b), did not use the term "agent" or the phrase "a person under a party's control" but instead advisedly used the terms "officer, director, or employee." We deem the use of the descriptive words "officer, director, or employee" to be limited and legal terms of art.

We find support for this conclusion in the language used in Supreme Court Rule 213(f) (210 Ill. 2d R. 213(f)), wherein the supreme court drew a distinction between "independent expert witnesses," as defined in Rule 213(f)(2), and "controlled expert witnesses," as defined in Rule 213(f)(3). "An 'independent expert witness' is a person giving expert testimony who is not the party, the party's _current_ _employee_, or the party's retained expert." (Emphasis added.) 210 Ill. 2d R. 213(f)(2). On the other hand, "[a] 'controlled expert witness' is a person

giving expert testimony who is the party's <u>current</u> <u>employee</u>, or the party's retained expert." (Emphasis added.) 210 Ill. 2d R. 213(f)(3). Rule 213 requires a party to provide substantially greater information regarding a controlled expert witness who will testify at trial than it does regarding an independent expert witness. Thus, Rule 213--which had been in effect several years before the trial court's fall 2005 ruling that Garlock had violated Rule 237(b)--demonstrates the supreme court (1) appreciates the difference between a witness who is an employee of a party and a witness who is not and (2) utilizes the word "control" when it deems it appropriate to do so. Accordingly, if the supreme court meant for Rule 237(b) to include circumstances wherein a party has some control over persons who are not technically employees, the supreme court would have said so.

### 4. <u>Clarification</u> <u>of</u> <u>Our</u> <u>Holding</u> <u>in</u> <u>White I</u>

The trial court on remand from <u>White I</u> interpreted this court's decision in that case to endorse the first trial judge's determination that Garlock should be sanctioned under Rule 237(b) because this court apparently agreed that Rule 237(b) included persons under a party's control. That interpretation was in error.

As earlier noted, <u>White I</u> was before us on appeal pursuant to Rule 306(a), which permits a party to petition for leave to appeal to this court from an order of the circuit court granting a new trial. The last paragraph of Rule 306(a) provides as follows: "If the petition for leave to appeal an order

- 23 -

granting a new trial is granted, all rulings of the trial court on the posttrial motions are before the reviewing court without the necessity of a cross-petition."  210 Ill. 2d R. 306(a).  In White I, we cited that language and wrote the following:  "Pursuant to [Rule 306(a)], White argues that Garlock not only violated Rule 213(i) but also Rule 237(b) (210 Ill. 2d R. 237(b)), and that these intentional violations require the entry of judgment against Garlock on liability and causation and a new trial on damages only.  We disagree."  White I, 373 Ill. App. 3d at 330, 869 N.E.2d at 260.

This court's discussion in White I of White's claim that Garlock violated Rule 237(b) was set forth as the last portion of our opinion in that case, after we had already resolved that the trial court did not err by granting White a new trial as the remedy for Garlock's Rule 213(i) violation.  White contended that Garlock's intentional violation of Rule 237(b) required the entry of judgment against Garlock on liability and causation and a new trial on damages only.  We rejected White's contention and concluded that the matter was addressed to the trial court's sound discretion.  We explained our rejection of White's contention as follows:

> "We earlier mentioned the obvious care
> and consideration the trial court gave to the
> Rule 213(i) issue in this case, and we are
> equally impressed regarding the court's han-
> dling of the Rule 237(b) issue.  Like other

- 24 -

discovery issues, the appropriateness of any sanction for a violation of Rule 237(b) is left to the sound discretion of the trial court. We conclude that the trial court did not abuse its discretion on this matter, and accordingly, we decline to grant White the additional relief she has requested on appeal." White I, 373 Ill. App. 3d at 331, 869 N.E.2d at 261.

As the previous quotation demonstrates, the question before us in White I regarding Rule 237(b) was the following: Did the trial court abuse its discretion by not entering judgment against Garlock on liability and causation and ordering a new trial on damages only? We answered that question no, finding no abuse of the trial court's discretion. In doing so, we were not first required to determine whether any Rule 237(b) violation occurred, especially given the context of the case presented to us on appeal.

As stated earlier, Garlock brought its appeal in White I pursuant to Rule 306(a) to challenge the trial court's order granting White's motion for a new trial because Garlock violated Rule 213(i). Garlock contended both that no violation occurred and that, if a Rule 213(i) violation did occur, the court's sanction was too harsh. We rejected Garlock's positions regarding the trial court's findings that a Rule 213(a) violation had occurred and that the new trial sanction was appropriate.

- 25 -

Although Garlock vigorously disputed at trial White's claim that Garlock was required to produce Dr. Carlson under Rule 237(b), that ruling was not part of Garlock's Rule 306(a) appeal. Given that the jury returned a verdict in Garlock's favor, Garlock's position is entirely understandable. That is, although Garlock believed the trial court erred in its Rule 237(b) rulings, Garlock did not care about those rulings on appeal because the trial court did not base its order granting White a new trial on those rulings; instead, the court based its new-trial ruling solely upon Garlock's violation of Rule 213(i).

These circumstances explain why Garlock, in its initial brief before this court, made no mention at all of the trial court's Rule 237(b) rulings. Only after White in her brief raised the issue--namely, that the trial court's sanction against Garlock for violating Rule 237(b) was insufficient and constituted an abuse of discretion--did Garlock even mention Rule 237(b). And even then, Garlock concluded its discussion of this subject in its reply brief as follows: "The trial court correctly concluded that Garlock's failure to produce Dr. Carlson to testify at trial did not prejudice the plaintiff and, therefore, did not provide a basis for granting plaintiff a new trial."

Regarding Rule 237(b), this court chose in White I to address only whether the trial court abused its discretion by imposing the sanction it did against Garlock based upon its finding that Garlock violated that rule. In retrospect, we can see how this court could have avoided the trial court's misinter-

pretation of our decision in <u>White I</u> had we added the following sentence to our decision: "In concluding that the trial court did not abuse its discretion, this court takes no position as to whether a Rule 237(b) violation occurred in the first place."

### 5. <u>White's</u> <u>Ambiguous</u> <u>Interrogatory</u>

As previously stated, the Rule 237(b) issue in this case arose from Garlock's response to the following interrogatory:

> "Has [Garlock] ever had one or more
> persons whose primary responsibility included
> looking after or monitoring the health of
> [Garlock's] employees, such as a medical
> director? If so, state the following as to
> each person who [has] held this position:
> name, address, name of the position or title,
> and dates during which he or she held the
> position."

Garlock responded that Dr. Carlson had done so since "July/August 2002."

The question White asked is inherently ambiguous. A party responding to this question could legitimately believe that its scope would include (at least) all of the following:

> (1) An employee of Garlock.

> (2) An employee of a medical services
> provider who contracted with Garlock to pro-
> vide medical services for its employees.

- 27 -

(3) A physician or health-care provider
who routinely saw Garlock employees upon
reference from Garlock, as well as other
patients, as part of that physician's medical
practice.

Obviously, in our judgment, only the first of these persons would fit under the language of Rule 237(b) as being "an officer, director, or employee" of Garlock.

### 6. White's Other Contentions Regarding the Trial Court's Rule 237(b) Ruling

In support of White's claim that the trial court properly ruled that Garlock was required to produce Dr. Carlson under Rule 237(b), White raises three additional claims: (1) the affidavits submitted by Garlock are hearsay; (2) Garlock may not contradict its sworn answers to a written interrogatory in order to create an issue of fact; and (3) a "substantial relationship" existed between Garlock and Dr. Carlson.  We address each of these contentions in turn.

### a. White's Claim That the Affidavits Submitted by Garlock Are Hearsay

The trial court determined that Garlock violated Rule 237(b) by failing to produce Dr. Carlson.  As a sanction for this failure, the court entered judgment against Garlock on the issue of liability and causation and ordered the case to proceed on the issue of damages only.  The question before this court is whether the trial court was correct in its ruling that Garlock violated Rule 237(b).  In resolving that issue, this court will consider

all of the materials the parties submitted to the trial court in support of their respective positions thereon. Some of the materials submitted by Garlock included affidavits (specifically, of Dr. Carlson and Garlock corporate executive Ramond Mathes) to the effect that Dr. Carlson was not then and had never been an employee of Garlock. Regarding these affidavits, White makes the following contention on appeal: "The affidavits submitted by Garlock are hearsay, and are not admissible at trial on a contested issue."

Because this contention provides neither analysis nor citation of authority in support thereof, we could simply disregard it as being in violation of Supreme Court Rule 341(i) (210 Ill. 2d R. 341(i)). However, we choose to address this contention on its merits.

Whether a party has violated Rule 237(b) is a matter for resolution by the trial court, not by a jury. Thus, contrary to White's contention, whether a Rule 237(b) violation has occurred is not a "contested issue at trial," to be resolved by the trier of fact. Nor do the formal rules of evidence apply regarding what the trial court may consider when addressing a Rule 237(b) issue. Instead, the trial court may consider affidavits on point and should look to Supreme Court Rule 191(a) (210 Ill. 2d R. 191(a)) for guidance regarding what those affidavits should show.

For instance, in the present case, the affidavits submitted by Garlock regarding the Rule 237(b) issue before the

trial court were made on the personal knowledge of the affiants and set forth with particularity the facts upon which the affidavits were based. Also, they did not consist of conclusions but of facts admissible in evidence. They also affirmatively showed that the affiants, if sworn as witnesses, could testify competently thereto. White's brief is bereft of any analysis as to why the trial court should not have considered these affidavits, and we conclude that they were properly before the trial court, as well as this court on appeal.

### b. White's Contention That Garlock May Not Contradict Its Sworn Answers to the Written Interrogatory

Regarding the consideration by the trial court and this court of Garlock's affidavits, White writes the following: "When Garlock asks the court system to ignore what it has said, through the sworn testimony of its corporate representative, James Heffron, and through its sworn answers to interrogatories ***, Garlock is asking the court to permit it to do what a litigant is barred from doing in summary judgment proceedings *** or at trial." We disagree.

White is essentially arguing that Heffron's initial testimony and Garlock's response to the interrogatory discussed earlier constitute judicial admissions, which may not later be controverted. However, "'[a] judicial admission is a deliberate, clear, unequivocal statement of a party, about a concrete fact, within the party's peculiar knowledge.' [Citation.]" Rath v. Carbondale Nursing & Rehabilitation Center, Inc., 374 Ill. App. 3d 536, 538, 871 N.E.2d 122, 125 (2007). Heffron's initial

- 30 -

testimony and Garlock's response to the interrogatory did not constitute judicial admissions.

We earlier criticized White's interrogatory as patently ambiguous, which in turn means that any response to it by Garlock (including the one Garlock actually made) could not, by definition, constitute a judicial admission. Heffron's initial testimony--that Dr. Carlson had been Garlock's company physician --suffers from the same defect of patent ambiguity. Just as someone might refer to Dr. Jones as his "family's doctor" (meaning he takes care of everyone in the family) without meaning that Dr. Jones is an "employee" of that family, so might Heffron refer to Dr. Carlson as "Garlock's company physician" without meaning that Dr. Carlson was an "employee" of Garlock. Indeed, Heffron later testified that the latter was in fact Dr. Carlson's role. That is, Dr. Carlson was a physician whom Garlock had contracted to handle certain medical issues, but he was not an employee.

We note once again that White's counsel did not use the word "employee"--the term actually used in Rule 237(a)--when he called Heffron during the first trial and asked him whether Dr. Carlson had been Garlock's company physician. Garlock, of course, could have--and should have--sought clarification from Heffron at that time regarding Dr. Carlson's nonemployee status. However, Garlock overcame its initial failure in this regard by calling Heffron to testify during the second trial. Thus, when the trial court made its ruling at issue in this appeal--namely, that Garlock had violated Rule 237(b)--the court had all the

- 31 -

information it needed (including Heffron's clarification) to know that Dr. Carlson was not Garlock's employee.

c. White's "Substantial-Relationship" Claim

White also asserts the following:

"[E]ven if this [c]ourt were to consider the otherwise inadmissible materials provided by Garlock and ignore the only admissible evidence on the matter, the most that gains Garlock is a diminution of the relationship. Even under Garlock's materials, there is a substantial relationship between Garlock and Dr. Carlson."  (Emphasis added.)

We quote this argument because this claimed "substantial relationship" between Garlock and Dr. Carlson seems to be the gist of White's position throughout this litigation.  In other words, White contends that Dr. Carlson is somehow under Garlock's "control" and must be produced pursuant to Rule 237(b) even though he is not, within the plain language of Rule 237(b), an "employee, officer, or director" of Garlock.  For the reasons previously stated, we strongly disagree with this contention and reiterate that Rule 237(b) means precisely what it says:  "employee, officer, or director."  "Substantial relationships" or "degrees of control" are immaterial when determining whether Rule 237(b) applies.  Instead, Rule 237(b) requires a specific relationship--namely, that of an officer, director, or employee.

B. Garlock's Claim That It Should Be Allowed To Introduce Evidence of Decedent's Exposure to Other Sources of Asbestos

Last, Garlock next argues that if this court remands this case for a new trial, Garlock should be allowed to introduce evidence of decedent's exposure to other sources of asbestos, pursuant to the supreme court's recent decision in Nolan v. Weil-McLain, 233 Ill. 2d 416, 444-45, 910 N.E.2d 549, 564 (2009) (overturning contrary case law and holding that a defendant in an asbestos-related injury case must be allowed to introduce evidence of other asbestos exposure in support of its sole proximate cause defense). Garlock contends that the court's prior rulings prohibiting Garlock from introducing such evidence were based on the cases that the Nolan decision overturned and, therefore, this court should reverse those prior rulings and order that Garlock be allowed to introduce such evidence on remand. Because, generally we only review arguments presented to the trial court (see People v. Hudson, 228 Ill. 2d 181, 190, 886 N.E.2d 964, 970 (2008) (noting that issues should be raised at the trial level so that, when appropriate, the court may reconsider its own ruling)), we decline Garlock's invitation to enter such an order.

Here, the trial court based its ruling as to whether decedent's exposure to other sources of asbestos should be admitted prior to the supreme court's decision in Nolan. Given the unusual circumstances of this case, we conclude that Garlock's argument about Nolan is best presented to the trial court in the form of a motion to reconsider. Doing so will give both parties the opportunity to fully brief and argue the issue.

Because we are remanding this case for a new trial, we

- 33 -

need not address Garlock's alternative argument that this court should order remittitur.

IV. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded for a new trial.

MYERSCOUGH, P.J., concurs.

APPLETON, J., specially concurs.

JUSTICE APPLETON, specially concurring:

While I concur in the majority's result, I write separately to take potential exception to the broad statement by the majority that the duty to produce a witness pursuant to Supreme Court Rule 237(b) is strictly limited to officers, directors, or employees of a party.

Without disagreeing with the express language of the rule, it is not beyond conception that a person could be employed by "Corporation A" but, by his or her service to "Corporation B" pursuant to a contractual agreement, by the determination of the employee's income or by actual conduct (including the right to direct by Corporation B) could be properly deemed in fact to be an employee of Corporation B. There may be many purposes for such contractual arrangements--one being the potential avoidance of Rule 237(b) duties to produce.

As there is no evidence in this record of the contractual relationship between Dr. Carlson's employer and defendant or, as importantly, any evidence of intent on the part of defendant to thereby evade the strictures of Rule 237(b), I concur.